```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Carl Edward Stewart,              :

       Plaintiff,                 :

    v.                            :       Case No. 2:14-cv-377

                                  :       JUDGE MICHAEL H. WATSON
Commissioner of Social Security,          Magistrate Judge Kemp
                                  :
       Defendant.                 :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Carl Edward Stewart, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on July 27, 2010, and alleged that Plaintiff became disabled on February 1, 2006.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on May 28, 2012, and a supplemental hearing on December 6, 2012.  In a decision dated December 13, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on February 27, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on June 23, 2014.  Plaintiff filed his statement of specific errors on August 29, 2014, to which the Commissioner responded on November 21, 2014.  Plaintiff filed a reply brief on December 11, 2014, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 44 years old at the time of the first administrative hearing and who has a high school education,

testified as follows. His testimony appears at pages 45-46 and 50-62 of the administrative record.

Plaintiff did not testify at the first administrative hearing. At the second, Plaintiff testified that he was unable to read. He took the oral examination for his driver's license. He was in special education classes throughout school, including being the only person in his class for the last three years.

Plaintiff had worked as a forklift operator, a job obtained for him by his cousin. He could not do that job any more because of a rotator cuff injury. He had trouble getting along with others, having been in many fights and also in legal trouble. He believed that he could not work at all due to problems with his left arm, which he could not raise above his head. He did socialize with a few friends and family members.

As far as other impairments, Plaintiff testified to pain in both of his knees, but he could walk about a mile. He also said it was difficult for him to calculate change or do simple tasks like using a credit card to buy gasoline.

### III. The Medical Records

The medical records in this case are found beginning on page 484 of the administrative record. The pertinent records - those relating to Plaintiff's two statements of error - can be summarized as follows. Records concerning Plaintiff's physical condition will not be included in this summary because Plaintiff has raised no issues about that part of the case.

First, in connection with a prior application for benefits, Plaintiff was examined consultatively by Mr. Spindler. Mr. Spindler reported that Plaintiff drove himself to the appointment and located his office without difficulty. Plaintiff said he had many friends in high school and got along well with students and teachers. He reported a legal history of being arrested for aggravated assault, destruction of property, and shooting his

neighbor's dog. He said he quit his forklift operator's job because he did not get along with his coworkers. At that time, he believed his most disabling condition was not being able to sit in one position for very long. Plaintiff did not appear depressed and he reported an average energy level with some problems controlling his anger. He did not like being in crowds. He appeared to be functioning in the low-average range of intelligence, and could shop for food and clothing. He watched television and did household chores, and enjoyed playing cards and target shooting. He socialized with about ten friends as well as his children. His full-scale IQ was measured at 81. Mr. Spindler concluded that Plaintiff suffered from, among other things, a depressive disorder in partial remission and a personality disorder with antisocial features. His GAF was rated at 60, and he had moderate impairments in his ability to relate to others and to deal with work stress. Alcohol dependence played a part in Mr. Spindler's assessment. (Tr. 567-72).

    Dr. Zwissler reviewed this report and found only a few moderate limitations in the areas of dealing with detailed and complex instructions and dealing with the public, coworkers, and supervisors. He said that Plaintiff could deal with simple tasks and could interact superficially with others, and also could adjust to minor, infrequent deviations from routine job duties. (Tr. 590-92).

    The next consultative examination was done in 2010 by Mr. Bousquet. Plaintiff told Mr. Bousquet he never had any legal difficulties and said he lost his forklift operator's job due to physical difficulties. He presented with an anxious and sad mood and described low energy and problems with anger. He also reported significant anxiety. He denied any problems making change or counting money and said he socialized but belonged to no organizations. His full-scale IQ was measured at 70 but his

verbal comprehension score was 81 and his perceptual reasoning score was 82.  He was able to pay attention and concentrate during the testing process.  Mr. Bousquet diagnosed major depressive disorder, recurrent, an anxiety disorder, a reading disorder, and borderline intellectual functioning, and rated Plaintiff's GAF at 50.  He also found a marked impairment in the ability to relate to others, based on Plaintiff's having been fired once due to a workplace dispute and his reported levels of anxiety, depression, anger, and frustration.  For the same reasons, he found a marked impairment in the ability to deal with workplace stress.  (Tr. 614-22).

    Finally, Dr. Leisgang did a consultative evaluation in July, 2012.  Plaintiff told her he could not work due to leg surgery, knee problems, and a torn rotator cuff.  He also said he had few friends in school and had only a single contact with the legal system.  He denied a history of substance abuse.  He told Dr. Leisgang that he had been fired twice due to difficulty getting along with supervisors.  He reported periodic episodes of depression and occasional anxiety including panic attacks, as well as manic periods with increased energy.  He saw family and a few friends regularly and enjoyed hunting and fishing.  Plaintiff was cooperative during the examination but his short-term memory skills were limited and his attention and concentration were only marginally adequate.  He was distracted during testing.  His full-scale IQ was measured at 74 but he was functioning in the low-average range of intelligence.  His general reading skills were weak and he struggled with basic division and fractions.  Dr. Leisgang diagnosed a bipolar disorder, a learning disorder, and a personality disorder, and rated Plaintiff's GAF at 51.  She thought he would have difficulty with written and multi-step instructions, said his attention and concentration skills were not strong, and believed he might have problems with coworkers

and supervisors and coping with minor criticism or major changes in the work environment.  (Tr. 639-46).

### IV.  The Medical Testimony

Dr. Brendemuehl, a medical expert, testified at the second administrative hearing.  She said that the record contained suggestions of various problems with the left shoulder, lumbar spine, bilateral knees, and a tibia fracture, but the recent consultative examination showed only occasional expiratory wheezes and some minimal changes in the spine.  She did not identify any exertional limitations.  (Tr. 40-41).

Dr. Blair, another medical expert, was called at that hearing to testify about psychological impairments.  He discussed the results of various consultative examinations and tests, and said that he did not believe that an IQ test score of 70 reflected Plaintiff's true abilities.  Dr. Blair placed Plaintiff in the low-average range of intellectual functioning.  Dr. Blair thought the supported diagnoses included "maybe" depression not otherwise specified and a learning disability.  As far as limitations, Dr. Blair saw problems in dealing with the public on more than an occasional basis, but thought that Plaintiff could frequently deal with coworkers or supervisors.  He also said Plaintiff could remember and perform instructions, even with changes, and he had a moderate limitation in work pace.  (Tr. 41-49).

### V.  The Vocational Testimony

Very brief testimony was taken at the first administrative hearing from William Tansey, a vocational expert.  He said Plaintiff's only past relevant work was the forklift operator job, which was light and semi-skilled.  Plaintiff did not acquire any transferable skills.

A different vocational expert, Ms. Shapero, testified at the second administrative hearing.  She said the forklift operator

job was slightly more skilled than Mr. Tansey had testified (an SVP of 4 rather than three) but otherwise confirmed his testimony.  She was asked some questions about a hypothetical person who could work at any exertional level.  The person was limited to no more than detailed instructions and tasks and was functionally illiterate.  He could also have only occasional, incidental contact with the public and occasional interactions with coworkers and supervisors.  She responded that such a person could not do Plaintiff's past work but could do, as an example, janitorial work at the medium and light exertional levels and could do a sedentary job such as stuffer.  Those were all unskilled jobs.  However, someone who had a marked impairment in the ability to deal with supervisors could not be employed.  (Tr. 50, 62-64).

      V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 10-23 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 1, 2006.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including depression and a learning disability.  At step three, the ALJ found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with

the following nonexertional limitations: he was limited to detailed instructions and tasks, was functionally illiterate, and was limited to occasional and incidental contact with the public and only occasional contact with coworkers and supervisors. Also, he could not do fast-paced work or have to meet strict production quotas.  He also required a stable work environment with no changes in work routine.  The ALJ found that, with these restrictions, Plaintiff could not do his past work.  However, he also determined that Plaintiff could do the jobs identified by the vocational expert, including unskilled medium or light janitorial work and the sedentary job of stuffer.  The ALJ further found that such jobs existed in significant numbers in the regional and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

   VI. <u>Plaintiff's Statement of Specific Errors</u>

 In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred by assigning great weight to the testimony of Dr. Blair, who disagreed with all of the examining mental health sources; and (2) the ALJ did not perform a "function by function" analysis of the vocational evidence as it related to Plaintiff's functional illiteracy and other psychological limitations.  These issues are evaluated under the following legal standard.

 <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th

Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.   Weighing the Medical Evidence

In his first statement of error, Plaintiff challenges the ALJ's decision to rely almost exclusively on Dr. Blair's opinion, noting that Dr. Blair disagreed with all of the consultative examiners.  Plaintiff argues that the ALJ did not give good reasons for assigning only some weight to the conclusions reached by Mr. Spindler and giving no weight to Mr. Bousquet's and Dr. Leisgang's opinions.  He asserts that this violated the usual precept that the opinions of examining sources are to be given more weight that non-examining physicians, citing to [former] 20 C.F.R. §404.1527(d)(1) and this Court's decision in Snell v. Comm'r of Social Security, 2013 WL 372032 (S.D. Ohio Jan. 30, 2013).  In response, the Commissioner contends that the record fully supports the way in which the ALJ evaluated the various opinions and that he was entitled to prefer Dr. Blair's opinion because it was the most consistent with the evidence and was based on a review of the totality of the record.

The law in this area is clear.  In 20 C.F.R. §404.1527(c)(1), the Social Security Administration tells claimants that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  The hierarchy of preference for medical opinion evidence is, other things being equal, (1) treating sources, (2) non-treating but examining sources, and (3) non-treating, non-examining sources.  See Smith v. Comm'r of Social Security, 482 F.3d 873, 875 (6th Cir. 2007).  But the regulations also state that the opinions of all three types of sources will be weighed in accordance with the factors set forth in §404.1527(a)-(d), and "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  SSR 96-6p.  Thus, an ALJ may, in accordance, with §404.1527(c)(4), give more weight to opinions which are more consistent with the record as a whole.  In short, "[a]ny record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." Norris v. Comm'r of Social Security, 461 Fed. Appx. 433, 439 (6th Cir. Feb. 7, 2012).  The question then becomes whether the weight assigned to each opinion has substantial support in the record.

The ALJ engaged in a thorough discussion of the various medical opinions.  He accurately summarized the results of the evaluations done by Mr. Spindler, Mr. Bousquet, and Dr. Leisgang (Tr. 16-17).  The ALJ then pointed out, correctly, that Plaintiff had minimal history of mental health treatment, and also made a credibility finding - "the record indicates that he is not credible regarding the severity of his complaints,", Tr. 17 - which Plaintiff does not challenge.  The ALJ focused more on the objective findings than those based on Plaintiff's subjective

reports of symptoms and found that they did not support the more extreme restrictions alleged. He also noted the inconsistency between restrictions on social functioning and Plaintiff's report of his activities of daily living, including the extent to which he was able to socialize with others. Id. Again, the record supports these observations.

The ALJ next explored some of the opinions offered by Dr. Blair, including his view that the diagnoses of bipolar disorder and personality disorder were based solely on Plaintiff's description of his symptoms. He also credited Dr. Blair's views about the severity of Plaintiff's impairment, noting again that more extreme limitations on Plaintiff's ability to deal with others were based on his self-reports, and he gave Dr. Blair's opinion great weight because it was "consistent with the claimant's education and vocational history" and "supported by the claimant's minimal history of any mental health treatment and his extensive activities of daily living reflected in the record." (Tr. 19). Notably, Plaintiff does not challenge the fact that much of the evaluators' conclusions were based on his self-reports or the ALJ's determination that he was very inconsistent in the statements he made to them, and there is substantial support for the ALJ's statement that Plaintiff neither sought any significant mental health treatment or was only minimally impacted by psychological symptoms in his activities of daily living.

The ALJ did not reject the other opinions outright. He directly credited Mr. Spindler's conclusion that Plaintiff could carry out at least simple job instructions, and he implicitly accepted his view about Plaintiff's ability to relate to others by limiting his contact with supervisors and coworkers to occasional, rather than adopting Dr. Blair's more optimistic view. He also characterized Mr. Bousquet's opinion as resting largely on Plaintiff's subjective report of symptoms - which, to

the extent it was based on depression or anxiety, it clearly was - and he rejected the marked limitations noted by Dr. Leisgang as inconsistent with Plaintiff's high level of activities of daily living and his lack of significant mental health treatment. While failing to seek mental health treatment is not, standing alone, a very firm basis for determining if a claimant has mental health impairments, see Burton v. Apfel, 208 F.3d 212 (6th Cir. 2000), the balance of the ALJ's rationale rests on legitimate reasons to discount the opinions of mental health consultants. See, e.g., Burns v. Colvin, 2014 WL 5782916 (S.D. Ohio Nov. 6, 2014)(discussing various factors which allowed an ALJ properly to discount opinions of consultative mental health examiners, including the claimant's poor credibility, the absence of signs or symptoms supporting marked limitations, relatively normal mental status examinations, a higher level of functioning than indicated by the evaluator, and the lack of mental health treatment).

   Plaintiff's first argument boils down to a disagreement over the weight assigned to the medical evidence, and not a legal error.  Here, the ALJ gave valid reasons for crediting Dr. Blair's opinion and discounting the more extreme portions of the opinions of Mr. Bousquet and Dr. Leisgang, and those reasons are supported by the record.  A claimant may "ask[] the Court to reweigh the evidence, give her the benefit of the doubt to the extent that these facts may weigh in her favor and then advance a different view;" but that would not be proper because "the Court is charged with determining the sufficiency of the evidence, not its weight." Thomas v. Comm'r of Social Security, 2014 WL 2114567, *16 (N.D. Ohio May 20, 2014).  Here, because substantial evidence supports the ALJ's weighing of the opinion evidence, Plaintiff's first claim of error provides no basis for remanding the case.

### B. The Vocational Analysis

Plaintiff's second statement of error relates to the hypothetical question posed to the vocational expert. As more fully explained in the reply brief, he contends that telling the vocational expert to assume that someone is "functionally illiterate" does not convey enough information to allow the expert to understand what was being asked, nor does an answer to a question containing that limitation provide a basis for determining that a claimant can do the jobs identified. Essentially, Plaintiff argues that someone described as functionally illiterate may not be able to read at all, or may be able to read at a reduced level, and that it is impossible to know which way the vocational expert interpreted that phrase. The Commissioner argues that the phrase has a generally-accepted meaning and that Plaintiff waived any objection to the vocational expert's testimony by failing to cross-examine her on this issue.

It is difficult to see how Plaintiff was prejudiced by the claimed error concerning the phrase "functional illiteracy." If the vocational expert construed it to mean a complete inability to read, that interpretation favored Plaintiff. If she construed it as an inability to read more than simple words, that interpretation appears to have substantial support in the record. Neither Mr. Spindler nor Mr. Bousquet indicated that Plaintiff was totally illiterate, and both administered various tests to him. Dr. Leisgang's tests showed that he read at a second-grade level and spelled at the same level, which is indicative of below-normal reading skills but not total illiteracy. See Deaton v. Astrue, 2008 WL 89955 (E.D. Ky. Jan. 8, 2008), aff'd 315 Fed. Appx. 595 (6th Cir. March 5, 2009)(noting that someone who could read at a second or third-grade level had a "marginal education" and was not deemed to be illiterate). Dr. Leisgang also said Plaintiff would "have difficulty" following written instructions, but she did not indicate that it would be impossible for him to do

-12-


so, and the functional capacity form she completed suggests the same, noting that he would have problems with complex instructions "especially in written form" (although that impairment was marked but not extreme). (Tr. 645. 647). Plaintiff's testimony suggested that he had difficulty with certain tasks involving reading, such as buying gas with a credit card, only because of the number of written steps in the process, and not because he could not read at all. Plaintiff has not suggested any other interpretations of the phrase, nor has he argued that the less favorable interpretation - that he could read but well below the norm - was unsupported by the evidence.

It is also worth noting that other courts have not found the phrase to be problematic. For example, in Hawley v. Astrue, 2012 WL 1268475, *7 (M.D.N.C. Apr. 16, 2012), adopted and affirmed 2012 WL 3584340 (M.D.N.C. Aug. 20, 2012), the court found that a hypothetical question including the phrase "functionally illiterate" "sufficiently conveyed Plaintiff's limitations," and the court in Cutrer v. Shalala, 1994 WL 706614 (E.D. La. Aug. 24, 1994), found no error in including the phrase in a hypothetical question. Both that court and Newenham v. Barnhart, 2004 WL 1529289 (D. Me. Apr. 30, 2004, adopted and affirmed 2004 WL 1572636 (D. Me. May 19, 2004), can be read to hold that there is no difference between illiteracy and "functional illiteracy"; Newenham rejected an argument similar to the one presented here, stating that the claimant "was unable to identify anything in the administrative record or any other authority to support a conclusion that the two terms did not address essentially the same condition." Id. at *3. See also Sturgill v. Astrue, 2008 WL 4889524, *7 (E.D. Ky. Nov. 12, 2008), finding that the claimant's inability to read was effectively covered by a hypothetical question describing him as functionally illiterate). Thus, the cases which have addressed this question permit an assumption that the phrase is construed in the claimant's favor,

which completely undercuts Plaintiff's argument. Plaintiff has cited to no contrary authority, and the Court has not located any cases in which the use of that phrase has led to a reversal or remand of an ALJ's decision.

Here, it may have been preferable for the ALJ to be somewhat more precise in his description of Plaintiff's reading abilities. However, he cannot show prejudice from the ALJ's use of the phrase "functionally illiterate" both because it was more likely construed in his favor, and even if it was not, the less favorable interpretation is supported by the record. For these reasons, the Court finds no merit in Plaintiff's second statement of error.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                                /s/ Terence P. Kemp
                                                United States Magistrate Judge